# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Teresa Schirm Reinbolt,  Case No. 15-cv-813

    Plaintiff

v.  MEMORANDUM OPINION

Commissioner of Social Security,

    Defendant

## I.    INTRODUCTION

Before me are: (1) Magistrate Judge Thomas M. Parker's Report & Recommendation (Doc. No. 15); (2) Plaintiff Teresa Schirm Reinbolt's objections to the R & R (Doc. No. 16); and (3) Defendant Commissioner of Social Security's response to Plaintiff's objections. (Doc. No. 17).

## II.    BACKGROUND

On September 19, 2010, Reinbolt first applied for Disability Insurance Benefits and Supplemental Security Income. After a hearing, the ALJ found that she was not disabled. But the Appeals Council remanded the decision, stating, among other things, that the ALJ had failed to adequately evaluate the opinions of treating physicians Hafeez and Rai. (Doc. No. 8 at 144). On remand, another hearing took place, but the ALJ again denied disability benefits. The Appeals Council affirmed the ALJ's decision.

Reinbolt filed this case, contesting the second decision of the ALJ. Magistrate Judge Thomas M. Parker recommends I affirm the ALJ's decision. Reinbolt objected and the Commissioner responded to Reinbolt's objections. I find Magistrate Judge Parker has accurately

and comprehensively set forth the procedural and factual background of this case, and I adopt those sections of the R & R in full. (Doc. No. 15 at 1-29).

III. STANDARD

A district court must conduct a *de novo* review of "any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also Norman v. Astrue*, 694 F.Supp.2d 738, 740 (N.D. Ohio 2010).

The district judge "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). If the Commissioner's findings of fact are supported by substantial evidence, those findings are conclusive. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

IV. DISCUSSION

Reinbolt raises two objections to the Magistrate Judge's affirmation of both the weight given to the opinion of treating physicians Hafeez and Rai and the ALJ's credibility assessment.

A. Treating Source Opinions

When considering an application for supplemental security income, the Social Security Administration ("SSA") must evaluate every medical opinion it receives. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c). The SSA places medical sources into three categories: (1) non-examining sources; (2) non-treating, but examining, sources; and (3) treating sources. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Generally, treating sources are given the greatest amount of

2

deference and are to be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence in [the] case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). In deciding the amount of weight to give to any medical opinion, the SSA considers (1) the examining relationship; (2) the treatment relationship; (3) the supportability of the opinion in light of "all of the pertinent evidence"; (4) the consistency of the opinion with the record as a whole; (5) the medical source's specialization, if any; and (6) other factors the claimant or others bring to the SSA's attention which tend to support or contradict the source's opinion. 20 C.F.R. § 404.1527(c)(1)-(6); 20 C.F.R. § 416.927(c)(1)-(6).

The SSA "will always give good reasons" for the weight given to a treating source's opinion. *See* 20 C.F.R. § 404.1527(c)(2); *Cole v. Astrue*, 661 F.3d 931, 937-39 (6th Cir. 2011) ("In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned."). The treating-physician rule is designed to provide claimants with an understanding of the SSA's disposition of their applications and to permit "meaningful appellate review of the ALJ's application of the rule." *Rogers*, 486 F.3d at 242-43 (quoting *Wilson*, 378 F.3d at 544). To provide good reasons for discounting a treating physician's opinion, the ALJ must identify the reasons for discounting the opinion and explain how those reasons affected the weight the ALJ assigned to the opinion. *Rogers*, 486 F.3d at 243.

Reinbolt objects specifically to the weight given to the opinion of treating neurologist, Faizan Hafeez, M.D., signed onto by treating primary care physician, Krishna Rai, M.D. The ALJ gave the opinion little weight, explaining,

> The opinion of Dr. Hafeez, effectively adopted by Dr. Rai, is inconsistent with the medical record, including Dr. Hafeez's own objective examinations. For instance, during her initial visit, Dr. Hafeez noted that the claimant had significant social stressors, with a non-focal neurological examination, and concluded that it was

3

> possible the claimant's symptoms were part of a "somatization problem, with no organic etiology," and later recommended that she follow up with a psychiatrist (Ex. lOF/71, 81). Dr. Hafeez consistently recommended physical therapy and occupational therapy, along with an aerobics or water aerobics program for the claimant, along with increased physical activity, which is inconsistent with restrictions of standing for no more than five minutes per day and lifting less than ten pounds only occasionally (Ex. lOF/66; 27F/9). Additionally, objective medical testing has been normal, including the claimant's most recent visit with Dr. Hafeez, where he noted that the claimant's neurological examination was normal, as was recently conducted EMG and nerve conduction testing (Ex. 46F/1). Additionally, a referral to another neurologist by Dr. Hafeez yielded a normal examination, where the claimant was noted to have tenderness in her neck, shoulder, low back, and hips, and was observed to have good extremity strength (Exh.9F/3). She had normal and symmetrical reflexes, with a steady gait, and was diagnosed with fibromyalgia (Ex. 9F/3). Given these findings, the opinions of Dr. Hafeez, and therefore those of Dr. Rai, are given little weight, as they are inconsistent with the objective medical evidence, including Dr. Hafeez's own examinations of the claimant.

(Doc. No. 8 at 32).

In her objections, Reinbolt first argues the difficulty in diagnosing fibromyalgia. But, as noted by the Magistrate Judge, there is no debate that Reinbolt has fibromyalgia, as evidenced by the ALJ's references to fibromyalgia in his thorough description of her extensive medical history. The question is "what she is able to do even though she has that condition." (Doc. No. 15 at 39). Relatedly, Reinbolt also alleges that she was faulted for pursuing physical therapy as opposed to a more aggressive treatment regimen for her fibromyalgia. This is not true either. The ALJ did not reference physical therapy to critique the treatment, but to explain the inconsistency between the opinion given and regimen prescribed. Both of these specific allegations are immaterial to the objection. The weight given to the opinion will be upheld so long as the ALJ properly applied the treating-physician rule, weighing the factors and giving good reasons for his decision.

The ALJ evaluated and described all of the medical evidence, including the treatment relationship with Dr. Hafeez, beginning in May 2003 to the time the decision was made. There is no debate that the treatment relationship was extensive. It is the inconsistency of the opinion with the record as a whole, including the medical records from Dr. Hafeez's office, that the ALJ explains as his reasoning for assigning little weight. The opinion in question, given in July 2010 and resigned in

July 2013 as "unchanged," cites continuous pain so severe that she could not stand more than 5 minutes, sit more than 20, and could only walk one block. (Doc. No. 8 at 1196). These physical restrictions are inconsistent with Dr. Hafeez's regular recommendations that she exercise and perform physical and aqua therapy. *Id.* at 909 (Feb. 2009), 914 (Aug. 2006), 915 (Dec. 2003), 929 (April 2011), 931 (Oct. 2010). Dr. Hafeez also reported that she had been "exercising regularly" in June 2012. *Id.* at 1010.

Not only do Dr. Hafeez's records fail to support the opinion, but the ALJ also noted records from other medical professionals that contradict the restrictions. Between September and November of 2012, Reinbolt performed five physical therapy sessions which resulted in decreased pain and increased range of mobility. *Id.* at 30-31, 1085-91. In February 2010, Reinbolt's examining rheumatology consultant stated that "her clinical presentation [was] compatible with fibromyalgia," noting her normal range of motion and tender points. *Id.* at 29, 940. The rheumatology consultant also recommended thirty minutes of exercise three to four times per week. *Id.* Finally, in July 2008, another examining neurologist who concurred with the diagnosis of fibromyalgia, but stated she had good strength and normal tone and bulk in her extremities. *Id.* at 612. These records span several years, account for her diagnosis of fibromyalgia, and consistently support the fact that she can perform physical activity. After reviewing the medical record, I find the ALJ correctly noted the consistently "normal" findings, citing not only laboratory style tests, but also alternate objective medical evidence.

The ALJ found Reinbolt's fibromyalgia did affect her ability to perform work, but based on the entire record he determined that it did not restrict her abilities to the extent opined by Dr. Hafeez. His thorough review and consideration of the record is evident not only by his explanation of the weight given to Dr. Hafeez's opinion, but also that given to conflicting opinions. The ALJ also gave little weight to the consultative examiner, finding the opinion "generally inconsistent with the evidence, which shows that the claimant has impairments that limit her to less than the light

5

range of work." *Id.* at 33. As much as Dr. Hafeez had underestimated Reinbolt's abilities, the consultative examiner had overestimated them. The ALJ instead gave great weight to the state agency medical consultants which reflected Reinbolt's ability to perform "light work" with some limitations. *Id.* at 33. After reviewing the medical record and the ALJ's decision, I find the ALJ properly considered the factors and gave "good reasons" for assigning little weight to Dr. Hafeez's opinion. Reinbolt's first objection is overruled.

B.      Reinbolt's Credibility

Reinbolt also objects to the ALJ's finding that "her allegations of the limiting effects of [her] impairments [were] not entirely credible." Reinbolt first asserts that the ALJ erred in using boilerplate language. But usage of some boilerplate language by the ALJ with respect to credibility is permissible so long as "the ALJ provide[s] an adequate explanation of the adverse credibility finding." *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 174 (6th Cir. 2016). Here, the ALJ satisfied this requirement by supplanting the boilerplate language with a thorough explanation of his credibility finding with citations to evidence in the record. (Doc. No. 8 at 33-34).

The ALJ's credibility assessments are accorded "great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The reviewing court is "limited to evaluating whether or not the ALJ's explanations [of credibility] are reasonable and supported by substantial evidence in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). In addition to the objective medical evidence, "an ALJ may consider household and social activities in evaluating complaints of disabling pain." *Blancha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

As noted above, the ALJ thoroughly reviewed the entire record and analyzed the consistency of the evidence. In his credibility assessment, the ALJ cited not one, but many statements in the medical records inconsistent with Reinbolt's alleged debilitating pain. Specifically, he noted activities

6

such as going out dancing, baking "all day," several trips to Jamaica, shoveling horse stalls, and exercising to lose weight. (Doc. No. 8 at 33). Reinbolt does not point to any evidence to support her alleged severe pain, but instead says the statements cited by the ALJ were taken out of context or mischaracterized. After reviewing the record, I do not find that to be true. These statements regarding her household and social activities supply a sufficient basis for the ALJ's finding that her statements made to the SSA about the severity of her pain were not entirely credible. I find the ALJ had a reasonable basis for his credibility assessment and overrule Reinbolt's second objection.

## V. CONCLUSION

For the foregoing reasons, both of Reinbolt's objections are overruled. (Doc. No. 16). In accordance with Magistrate Judge Parker's R &R, I affirm the ALJ's decision.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge